GEORGE S. MUMFORD & others, trustees, vs. EDWARD F. COGHLIN.

Suffolk.   March 25, 1924. — May 21, 1924.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & WAIT, JJ.

*Bills and Notes*, Protest; Indorser: notice, discharge by extension of time to maker; Presentment; Alteration. *Notary Public. Letter. Evidence*, Record book of notary public, Of notice by mailing, Best evidence, Copy of lost certificate of protest, Res inter alios. *Practice, Civil*, Argument by counsel, Charge.

A notary public is a public officer under art. 4 of the Amendments to the Constitution of Massachusetts, and, therefore, at the trial of an action against an indorser upon a promissory note, it is proper to admit as evidence tending to show the proper protesting of the note the record book of the notary as to which he has testified that he kept it in the ordinary course of his business as a notary and that all entries therein were in his own handwriting.

Testimony of the notary public in the action above described, that he believed that notice of protest was sent to the defendant, was admissible where he also had testified that his belief was founded upon his usual practice in protesting notes, in keeping his book and making entries therein, although he also stated that he had no recollection of the transaction independent of the entry in his book.

The deposit in a United States mail box of a notice in writing of protest of a promissory note is similar in legal effect to a depositing of the notice in a box at the post office.

At the trial of the action above described, the notary public testified that he had attached a notarial certificate to the note, that this certificate had been lost, and that after search it could not be found.   The judge admitted in evidence a copy of the original notice.   The defendant contended that, since G. L. c. 107, § 13, referred only to the original document, it was improper to admit in evidence a copy for the same purpose.   *Held*, that the admission of such secondary evidence was proper.

At the trial of the action above described, the notary public had testified that he protested the note and notified three indorsers of the protest. Testimony by one of the indorsers, who was not a party to the suit, that he had not received notice of dishonor was excluded.   *Held*, that the exclusion was proper, it not being material whether notice was given to such indorser not a party to the suit and the defendant not having objected to the introduction in evidence of that part of the notary public's record which related to the other indorsers.

At the trial of the action above described, for the purpose of showing that the maker had been granted an extension of time for payment without

the consent of the defendant, an indorser, so that the indorser was discharged from liability, the defendant offered to prove that the maker's president expressed to the plaintiff's president a willingness to pay the note and the plaintiff's president told him to make payments to another creditor of the maker. It did not appear that payments were made to the other creditor or that the maker made a tender to the plaintiff of the amount due on the note or did anything that he was not already bound to do. *Held*, that no valid or enforceable agreement for an extension of time was shown, and that the defendant was not discharged.

The testimony of a notary public in the action above described, that he had protested the note, and his record were evidence of due presentment, and it was proper for the trial judge to refuse to rule that there was no evidence from which the jury might find that the note in question was duly presented for payment.

It appeared that the note above described originally had at its upper left hand corner the figures $5,000. The words in the body of the note showing the amount which the maker promised to pay were "Five Thousand Dollars." The note when produced at the trial showed that a line had been drawn through the figures $5,000 and the figures $2,000 written directly above. Indorsements on the back of the note showed three payments of $1,000 each. *Held*, that there was no evidence of a material alteration of the note which would result in its being discharged.

The note in the action above described did not provide for interest. On its face were stamped the words "Rate 6%," and opposite thereto was stamped "June 1." The due date of the note was June 1. *Held*, that this amounted only to a statement of the implication of law that, if the note was not paid at maturity, interest would be payable at six per cent after that date, and was not a material alteration discharging the note.

A certain comment, by counsel for the plaintiff in his closing argument, upon the absence of material witnesses whom, he argued, the defendant should have called to testify, and an instruction by the judge in his charge relating thereto, were *held* not to have been erroneous.

CONTRACT, originally brought by Prudential Trust Company against one of the indorsers on a negotiable promissory note described in the opinion. Writ dated December 14, 1920.

The right was granted on November 5, 1923, to substitute as plaintiffs George S. Mumford, John E. Hannigan and Henry V. Cunningham as trustees. In the Superior Court, the action was tried before *Raymond*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in his favor. The motion was denied. The defendant then asked for the following rulings:

" 1. Upon all the evidence the plaintiff is not entitled to recover."

" 5. There is no evidence from which the jury may find that the note in question was duly presented for payment."

" 8. The note in question has been discharged by a material alteration.

" 9. The note in question has been discharged by a material alteration in the amount."

The rulings were refused.

In his closing argument " the plaintiff's counsel commented on the fact that Charles M. Thayer, John E. White, Joseph E. Green and Daniel B. Cunningham and other persons, testified to by the witness McLaughlin as having been present at the conference at which it was claimed the extension of the note was given, had not been summoned in as witnesses by the defendant." The defendant objected to such argument, but the trial judge permitted the counsel to proceed subject to an exception by the defendant, and in his charge instructed the jury as follows: " It has been claimed and very properly claimed that anybody, those men or any other men in the Commonwealth were open to subpœna equally by the plaintiff or the defendant; that is all very true and the bearing, the only bearing of such an argument as that would be here who needed that testimony [*sic*]; that is who had the burden of proof as to that meeting up in Worcester; if the proof of what occurred at that meeting was necessary for the plaintiff then you might say that the plaintiff ought to call any man who was necessary to prove what did take place but if the facts that occurred, up there at the meeting in Worcester was needed by the defendant to establish his defence then you might say that he was the man who ought to subpœna and bring down here those men who knew the facts, or what took place at that meeting; so that it seems to me that it is simply a question of the burden of proof. I personally never felt as though the heat engendered by discussion of whether certain people have been called or haven't been called amounted to very much with a jury, but it serves sometimes to get some unwise judge's decision to be set aside so I expect it is serviceable, but I don't think

after eighteen years on the bench I have ever seen a case where I thought it cut any figure at all in bringing a jury to a conclusion; but it is for you to say; you heard the argument. I let it go in, I think it properly might go in and whether or not the defendant needed to show what took place up at that meeting and whether or not these men were needed to show that fact you may have in mind on the question of whether or not they ought to have called them. You ought also to bear another thing in mind: sometimes there are a lot of people who can testify about facts in issue, but, if they brought in in all cases all the people who knew anything about a fact to testify, why they would flood this court room and we wouldn't have time to get through any cases at all! [It] depends generally upon the good judgment of experienced counsel as to how many men they want to prove their case, people who do know the facts, and the skill of counsel is generally shown in the matter of their calling all the witnesses who are needed or who can testify to the real fact in issue and getting through sometime or other. That went in and I saw nothing unfair in the argument so far as it proceeded on that matter and you will take that with these comments that I have made upon it at the present time."

There was a verdict for the plaintiff in the sum of $2,722. The defendant alleged exceptions.

*S. C. Rand,* for the defendant.

*G. Alpert, (J. E. Hannigan* with him,) for the plaintiff.

CROSBY, J. This is an action to recover the balance of $2,000, and interest, alleged to be due on a promissory note. The maker of the note was Coghlin-Wilson Electric Company and it was signed on behalf of the company by the treasurer (the defendant), and indorsed by him, one McLaughlin, and one Wilson. It was dated December 1, 1916, and was payable to the plaintiff at its place of business six months after date.

The plaintiff called as a witness one Frazer, a notary public, who testified that he protested the note and notified the three indorsers by depositing notices in a mail box on Summer Street in Boston; that at the time of protest he attached a certificate of protest to the note, and entered in

a book a record of the protest; that the book was kept by him in the ordinary course of business and that all the entries were in his handwriting. He further testified that in protesting the note he followed the usual procedure and that except for the record he had no recollection of the transaction.

At the close of the evidence, the defendant moved that a verdict be directed in his favor; the motion was denied and the jury returned a verdict for the plaintiff. The case is before us on the defendant's exceptions to the refusal of the trial judge to direct a verdict, to the admission and exclusion of evidence, to the refusal of the trial judge to give certain requests for rulings, and to certain parts of the charge to the jury.

The record book kept by Frazer as a notary public was properly admitted in evidence to show that the note had been duly protested. Notaries public hold office under our Constitution (art. 4 of Amendments to the Constitution of Massachusetts), and entries made by them in a book kept in the regular course of business are deemed original acts, and are admissible to the extent that the facts stated are within the scope of their duty as defined by custom or statute. While Frazer testified that he had no recollection of the transaction independent of the entry on his book, he stated that from his usual practice in protesting notes, keeping his book, and making entries therein, he believed that the notices had been sent. This testimony was admissible and if believed was sufficient to prove the protest of the note, which included the sending of notices to the indorsers. Such books have long been held admissible in evidence. The entry in the book kept by the witness was admissible to refresh his memory and the book itself was properly admitted. *Shove* v. *Wiley*, 18 Pick. 558. *Adams* v. *Coulliard*, 102 Mass. 167, 173. *Costello* v. *Crowell*, 133 Mass. 352. The deposit of the notice in the mail box in the street was the same in legal effect as if it had been deposited in a box at the post office. *Johnson* v. *Brown*, 154 Mass. 105.

The notary testified that he attached a notarial certificate to the note, that this certificate had been lost, and after

search could not be found. Under these circumstances a copy of the original was properly admitted in evidence.

G. L. c. 107, § 13, provides that " The protest of a bill of exchange, promissory note or order for the payment of money certified by a notary public under his hand and official seal shall be *prima facie* evidence of the facts stated in such protest, and of the giving of notice to the drawer or endorser." As the original certificate would have been admissible, *Johnson* v. *Brown, supra, Feigenspan* v. *McDonnell,* 201 Mass. 341, yet, having been lost and not found after diligent search, an exact copy was competent. Secondary evidence was admissible in accordance with the general rule that where a written document has been lost its contents may be proved by an authenticated copy. See *Cooley* v. *Collins,* 186 Mass. 507. The contention of the defendant, that the statute refers to the original protest and that a copy cannot be admitted in evidence even if the original is lost, cannot be sustained for the reasons stated.

The defendant was permitted to introduce the testimony of McLaughlin (one of the indorsers), that he did not receive notice of dishonor; this evidence was afterwards excluded subject to the defendant's exception. McLaughlin was not a party to the suit and the question, whether he received notice as an indorser, was wholly immaterial. The fact that the notary's book showed that the note had been protested as to all three indorsers was admissible only so far as it related to the defendant. If he felt that he was prejudiced by the introduction of the part of the record relating to the other indorsers, he should have requested the trial judge that it be limited to the defendant. The only indorser the plaintiff sought to hold in this suit was the defendant. Whether any other indorser had been properly charged with notice was of no importance and the judge so instructed the jury.

For the purpose of showing that the maker had been granted an extension of time for payment without the consent of the defendant, who was thereby discharged, the defendant offered to prove that the president of the maker

expressed to the president of the plaintiff a willingness to pay the note and the latter told him to make payments to another creditor of the maker. This offer was rightly rejected: it fails to show a valid agreement; and it does not appear that payments were made to the creditor of the maker or that the maker made a tender to the plaintiff of the amount due on the note or did anything which he was not already bound to do. The offer fell far short of an offer to prove a valid agreement to extend the time for payment; besides, it was without consideration, was not binding on the plaintiff, and did not operate to discharge the indorsers. *Wilson* v. *Powers*, 130 Mass. 127. *Way* v. *Dunham*, 166 Mass. 263.

The defendant's fifth request was rightly denied. The notary testified that he protested the note. The word " protest " includes all the steps necessary to charge an indorser. *Demelman* v. *Brazier*, 198 Mass. 458, 463. As a certificate of protest made by a notary public is *prima facie* evidence of presentment, G. L. c. 107, § 13, *Johnson* v. *Brown, supra,* it could not properly have been ruled that there was no evidence from which the jury could find that the note was duly presented for payment. The testimony of the notary that in his usual and regular course of procedure he exhibited notes when demanding payment is evidence that he did so in the present case. *Holden* v. *Prudential Ins. Co. of America,* 191 Mass. 153. *Prudential Trust Co.* v. *Hayes,* 247 Mass. 311.

As the jury could not properly have been instructed that the note had been discharged by a material alteration, the refusal of the trial judge to give the defendant's requests eight and nine was not erroneous. On the face of the note, a line appears to have been drawn through the figures " $5,000.00 " in the upper left-hand corner, and " $2,000.00 " written directly above. A material alteration of a note without the assent of all the parties liable thereon renders it void. G. L. c. 107, § 147. Under § 148 of the same chapter it is provided in part that " Any alteration which changes . . . 2. The sum payable, either for principal or interest . . . or any other change or addition which alters

the effect of the instrument in any respect, is a material alteration." The words " Five Thousand Dollars " written on the face of the note remained unchanged. Upon the back of the note three payments of $1,000 each were credited on account of principal. It is manifest that the drawing of a line through the figures " $5,000.00 " and inserting above them " $2,000.00 " did not amount to a material alteration.

It is also contended that, although the note does not provide for interest, it has been materially altered by stamping on its face " Rate 6%." It appears that opposite " Rate 6% " is also stamped " June 1." It amounts only to a statement of the implication of law that, if the note was not paid at maturity, interest would be payable at six per cent after that date.

It could not have been ruled as matter of law that the comment by counsel for the plaintiff in his argument, or that part of the judge's charge relating to the failure of the defendant to produce witnesses, was erroneous. *Daniels* v. *Daniels*, 240 Mass. 380, 385, and cases cited. The cases relied on by the defendant, including *Fitzpatrick* v. *Boston Elevated Railway*, 223 Mass. 475, *Mikkelson* v. *Connolly*, 229 Mass. 360, and *London* v. *Bay State Street Railway*, 231 Mass. 480, are distinguishable in their facts from those in the case at bar. A careful examination of the charge fails to show any reversible error.

As we are unable to discover any error of law in the conduct of the trial, the entry must be

*Exceptions overruled.*